**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 13-36405** |
| **BROWN MEDICAL CENTER, INC.,** | § | |
| | § | **CHAPTER 11** |
| DEBTOR | § | |

**EMERGENCY MOTION FOR AUTHORITY TO USE CASH COLLATERAL**
(Preliminary hearing requested on or before October 18, 2013)

Pursuant to Local Rule 9013:

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Brown Medical Center, Inc. (the "Debtor" or "BMC"), debtor-in-possession, files this *Emergency Motion for Authority to Use Cash Collateral* (the "Motion"), and would show the Court as follows:

## I.  CAUSE FOR EMERGENCY CONSIDERATION

1.   BMC is a management company that has historically served as the epicenter of the operating business enterprise directly or indirectly owned or controlled by Michael Glyn Brown ("Brown"), including the six (6) surgery centers and related facilities in Houston, Austin, Dallas, San Antonio, Las Vegas, and Phoenix.  The business entities owned and/or controlled by Brown have historically sustained themselves through BMC's collection of receivables and payment of expenses.  However, BMC's revenue from receivables has drastically decreased, leaving BMC with insufficient funds to meet its own financial obligations and those of its affiliated entities.  As a result, all of the surgery centers except for Houston[1] have ceased operations other than performance of the limited administrative functions necessary for continued maintenance of records and collection of receivables.  Though BMC has reduced its staff considerably, a number of employees remain with the company to perform the above-described function.

2.   BMC has received various offers to purchase its assets and those of certain affiliated entities.  Crown Financial Funding, LP (the "Lender") is the Debtor's primary secured creditor, with a first lien on certain of the Debtor's accounts receivable.  Until a sale of the Debtor's assets is approved, consummated and closed, the Debtor will need to use its cash on hand to fund critical expenses to pay, among other things, insurance premiums, payroll for remaining employees, and utility services.  Accordingly, emergency consideration is necessary

---

[1] At the time of the filing of this Motion, the Houston center was operating. However, the Trustee anticipates that the Houston facility will be shut down in the near term due to lack of funds to pay operating expenses.

for the Debtor to use the Lender's cash collateral to pay critical expenses for the interim period until the Debtor can achieve a sale of its assets.

## II. JURISDICTION, VENUE, & CONSTITUTIONAL AUTHORITY

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This particular motion involves a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3. This Court has constitutional authority to enter a final order regarding the Debtor's use of cash collateral. 11 U.S.C. § 363(c)(2) has no equivalent in state law, thereby rendering the Supreme Court's opinion in *Stern v. Marshall* inapplicable. *See In re Carlew*, 469 B.R. 666, 672 (Bankr. S.D. Tex. 2012) (discussing *See Stern v. Marshall*, --- U.S. ---, 131 S.Ct. 2594, 180 L.Ed. 2d 475 (2011)). In the alternative, a debtor-in-possession's authority to use cash collateral is an essential bankruptcy matter which triggers the "public rights" exception. *See Id.*

## III. RELEVANT FACTUAL BACKGROUND

A. **BACKGROUND OF THE DEBTOR AND PROCEDURAL HISTORY**

4. The Debtor is a Texas corporation organized in 1996, which has served as the management and administrative core of the surgical centers, clinics, laboratories and related businesses owned and/or controlled, directly or indirectly, by Brown. Specifically, the Debtor has been responsible for collecting and administering accounts receivable for each of the surgery centers and their affiliates in exchange for a percentage fee. Historically, the Debtor has collected the receivables and remitted funds in accordance with its agreements, including funds to pay for the operating expenses for the various surgery centers, clinics, and laboratories. However, in recent months, the Debtor's business has slowed considerably due largely to

inadequate capital and lack of available funds to pay for advertising, the primary revenue driver for Brown's business model.

5. On January 23, 2013, Brown filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Florida (the "Florida Bankruptcy Court"). On March 13, 2013, the Florida Bankruptcy Court entered an Order Dismissing Case with Conditions and Reservation of Jurisdiction [Case No. 13-35892, Doc. No. 201] (the "Dismissal Oder"), and appointed General David L. Grange (the "CRO") as Chief Restructuring Officer for Brown's business entities, including BMC.

6. On September 11, 2013, the CRO filed an Emergency Motion to Reinstate Case, Appoint Chapter 11 Trustee, and Transfer Venue [Case No. 13-35892, Doc. No. 424] (the "Motion to Reinstate"). The CRO reported that his investigations of the BMC and other entities revealed that immediate action was required to save those companies from financial failure. The CRO further reported that his investigation with respect to the BMC had uncovered significant financial debt, misuse of revenue, and compliance issues. Lastly, the CRO reported that a bankruptcy filing for the BMC was likely immanent.

7. On September 24, 2013, the Florida Bankruptcy Court granted the CRO's Motion to Reinstate, reinstating the Chapter 11 case, directing the appointment of a Chapter 11 Trustee, and transferring venue for the case to this Court. [Case No. 13-35892, Doc. No. 435]. Brown's individual Chapter 11 case is presently pending in this Court, before the Honorable Jeff Bohm, in Case No. 13-35892 (the "Brown Individual Case").

8. On September 30, 2013, this Court entered an order approving the appointment of the Trustee as the Chapter 11 Trustee for Brown's bankruptcy estate. [Case No. 13-35892, Doc. No. 457].

9. On October 11, 2013, this Court issued an *Order Granting Emergency Motion of Chapter 11 Trustee for Authority to Act on Behalf of Business Entities in the Brown Individual Case* [Case No. 13-35892, Doc. No. 548] (the "Authority Order"). The Authority Order grants the Trustee, among other things, authority to exercise any and all rights associated with Dr. Brown's bankruptcy estate's 100% ownership interest in the Debtor, including but not limited to taking any and all action to vest the Trustee "with full authority to act on behalf of, manage, and direct personnel for" BMC. Also on October 11, 2013, this Court issued an Order authorizing the Trustee to file bankruptcy proceeding for BMC and certain other business entities, [Case No. 13-35892, Doc. No. 552] (the "Bankruptcy Authority Order"). Pursuant to the Authority Order and the Bankruptcy Authority Order, on October 15, 2013 (the "Petition Date"), the Trustee authorized the filing of a voluntary Chapter 11 petition initiating this case.

**B.     THE DEBTOR'S CASH COLLATERAL NEEDS**

10. The Debtor needs to use the Lender's cash collateral to operate its business through closing of the sale of its assets. Specifically, the Debtor needs to pay critical operating expenses to maintain its collection activities, including insurance premiums, payroll for the remaining employees, and utility services. Thus, an immediate need exists to use cash collateral to preserve the Debtor's assets while a sale is approved, consummated, and closed. A budget setting forth the anticipated revenues and necessary expenditures through December 1, 2013 is attached hereto, incorporated herein by this reference, and marked as **Exhibit A**. During the first fourteen (14) days, the Debtor requests authority to expend $191,335.00, which includes proposed adequate assurance deposits to the Debtor's critical utility service providers, and should be sufficient to prevent irreparable harm to the Debtor or its assets, pending a final hearing on this Motion.

C. **ADEQUATE PROTECTION OF LENDER'S INTEREST**

11. The Debtor is indebted to Lender pursuant to a promissory note in the original principal amount of $2 million, which indebtedness is secured by a security agreement from Allied Center for Special Surgery, Scottsdale, LLC covering accounts and accounts receivable which Debtor has the right to collect. Lender's interest in cash collateral can be protected several ways. First, upon information and belief, Lender is over-secured; that is, the Debtor believes that its portfolio of receivables associated with Allied Center for Special Surgery, Scottsdale, LLC, exceeds the amount of the indebtedness. As such, Lender enjoys an equity cushion and is adequately protected thereby. Second, the Debtor will abide by the attached budget and will not dissipate the cash collateral. Through its ongoing collection of receivables, the Debtor expects that a certain amount of cash will accumulate and remain in the Debtor's accounts pending further Order of the Court. Third, the Debtor's collection activities effectively monetize Lender's collateral at no additional cost to Lender other than the expenses set forth in the attached budget. Put another way, if the Debtor were not collecting the receivables, some of which are Lender's collateral, Lender would need to pay another agency to do so on its behalf. Fourth, with Court approval, pursuant to 11 U.S.C. § 552, the Debtor will grant Lender a replacement lien on post-petition collections attributable to Allied Center for Special Surgery, Scottsdale, LLC, to the extent and with the priority that such liens existed pre-petition. A proposed order authorizing the Debtor's use of cash collateral is attached hereto.

## IV. BASIS FOR RELIEF

12. The Debtor cannot preserve and maintain its assets without spending money. The Debtor's employees, professionals, utility service providers, and professionals must be paid. Thus, an immediate need exists to use cash collateral. The Bankruptcy Code recognizes the

necessity of such use and permits the Debtor to use collateral provided that Lender's interest in such cash collateral is adequately protected. *See* 11 U.S.C. §§ 361, 362(d), and 363(c)(2). Lender's interest in cash collateral is adequately protected by the following: (1) the value of the receivables, which, upon information and belief, provides an equity cushion to Lender; (2) the Debtor's adherence to the attached budget; (3) the Debtor's collection and monetization of accounts receivable for the benefit of Lender; and (4) the granting of replacement liens on Lender's collateral pursuant to § 552 of the Bankruptcy Code. The Debtor will seek the agreement of Lender on the matters set forth herein. However, due to the urgency of this matter, the Debtor must file this Motion before such an agreement is reached. After such filing, the Debtor will continue to negotiate with Lender to reach an appropriate agreement. In the event those negotiations are not successful, the Debtor seeks a Court determination that the offer of adequate protection set forth above is sufficient and that the Debtor is authorized to (a) maintain possession and control over collections generated from its receivables and (b) use such cash collateral in accordance with the attached budget.

13. Pursuant to Bankruptcy Rule 4001(b)(2), by this Motion, the Debtor requests a preliminary hearing, with a final hearing to be held after the expiration of fourteen (14) days from the date of service. In the event that no agreement is reached with Lender before the preliminary hearing, pursuant to Bankruptcy Rule 4001(b)(2), the Debtor requests authority to spend only the amount of cash collateral that may be necessary to avoid immediate and irreparable harm to the estate, pending a final hearing.

WHEREFORE, the Debtor requests that the Court schedule an emergency preliminary hearing on this Motion on or before October 18, 2013, and that the Court enter an order authorizing the Debtor to use cash collateral as set forth herein on an interim basis, pending a

final hearing. The Debtor further requests that the Court set a final hearing as soon as practicable after the expiration of the 14-day period set forth in Bankruptcy Rule 4001(b)(2). Furthermore, the Debtor requests that at such final hearing, the Court authorize the Debtor to use cash collateral on a final basis in accordance with the attached budget, with a ten percent (10%) allowed variance. The Debtor further requests such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

By: */s/ Spencer D. Solomon*_____
Gretchen G. McCord
Texas Bar No.  00798203
gmccord@nathansommers.com
Spencer D. Solomon
Texas Bar No.  24066117
ssolomon@nathansommers.com
Richard A. Kincheloe
Texas Bar No. 24068107
rkincheloe@nathansommers.com

Nathan Sommers Jacobs,
A Professional Corporation
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056
(713) 960-0303 (main)
(713)892-4800 (fax)

**PROPOSED ATTORNEYS FOR BROWN MEDICAL CENTER, INC., DEBTOR-IN-POSSESSION**

## CERTIFICATE PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(f)

A certificate of service for the foregoing Motion will be served upon all necessary parties within 24-hours of the filing of the Motion in accordance with Local Bankruptcy Rule 9013-1(f).

*/s/ Spencer D. Solomon*_____
Spencer D. Solomon

## CERTIFICATE OF ACCURACY

The undersigned certifies that the facts contained in the foregoing Motion are true and correct to the best of his knowledge.

*/s/ Spencer D. Solomon*_____
Spencer D. Solomon