UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 13-36405 |
| BROWN MEDICAL CENTER, INC., | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | |

**EMERGENCY MOTION PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE TO: (I) APPROVE THE DEBTOR'S PROPOSED ADEQUATE ASSURANCE OF PAYMENT FOR POST-PETITION UTILITY SERVICES, (II) ESTABLISH PROCEDURES FOR RESOLVING OBJECTIONS BY UTILITY COMPANIES, AND (III) PROHIBIT UTILITIES FROM ALTERING OR <u>DISCONTINUING SERVICE</u>**
(Hearing requested on or before October 25, 2013)

Pursuant to Local Rule 9013:

> **THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT HEARING.**
>
> **REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**
>
> **EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE JEFF BOHM, CHIEF UNITED STATES BANKRUPTCY JUDGE:

Brown Medical Center, Inc. (the "Debtor" or "BMC"), debtor-in-possession, files this Motion: (i) for approval of the Debtor's Proposed Adequate Assurance; (ii) to establish procedures for resolving any objections to the Motion by the Utility Companies that the Proposed Adequate Assurance is not adequate; and (iii) to prohibit the Utility Companies from altering, refusing, or discontinuing service to, or discriminating against, the Debtor solely on the basis of the commencement of this Chapter 11 case or a debt that is owed by the Debtor for services rendered prior to the Petition Date. In support of the Motion, the Debtor respectfully represents as follows:

## I.
## CAUSE FOR EMERGENCY CONSIDERATION

1. BMC is a management company that has historically served as the epicenter of the operating business enterprise directly or indirectly owned or controlled by Michael Glyn Brown ("Brown"), including the six (6) surgery centers and related facilities in Houston, Austin, Dallas, San Antonio, Las Vegas, and Phoenix. The business entities owned and/or controlled by Brown have historically sustained themselves through BMC's collection of receivables and payment of expenses. However, BMC's revenue from receivables has drastically decreased, leaving BMC with insufficient funds to meet its own financial obligations and those of its affiliated entities. As a result, all of the surgery centers except for Houston[1] have ceased operations other than performance of the limited administrative functions necessary for continued maintenance of records and collection of receivables. Though BMC has reduced its staff considerably, a number of employees remain with the company to perform the above-described function.

EMERGENCY MOTION PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE
TO: (I) APPROVE THE DEBTOR'S PROPOSED ADEQUATE ASSURANCE OF PAYMENT FOR POST-PETITION UTILITY SERVICES, (II) ESTABLISH PROCEDURES FOR RESOLVING OBJECTIONS BY
UTILITY COMPANIES, AND (III) PROHIBIT UTILITIES FROM ALTERING OR DISCONTINUING SERVICE         PAGE 2

2. BMC has received various offers to purchase its assets and those of certain affiliated entities. The Debtor has filed a motion for authority to use cash collateral during the interim period to sustain its collection activities through the date a sale is consummated and closed. However, the Debtor's use of cash collateral has not yet been approved. Nor has any proposed sale of the Debtor's assets. Until those requests are approved, the Debtor will need to maintain operations with respect to its collection of receivables, which operations will require the use of phones, electricity, water, internet service and other utilities. By this Motion, the Debtor proposes to pay Proposed Adequate Assurance to critical Utility Companies in order to prevent cut-off of services on account of any pre-petition claim by such companies. Emergency consideration is necessary to prevent termination of the Debtor's utility services and to allow the Debtor to maintain operations post-petition.

## II.
## JURISDICTION AND VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This particular motion involves a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

4. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

5. This Court has constitutional authority to enter a final order regarding the Utility Companies' ability to discontinue service to the Debtor on account of an unpaid pre-petition claim. 11 U.S.C. § 366(a) has no equivalent in state law, thereby rendering the Supreme Court's opinion in *Stern v. Marshall* inapplicable. *See In re Carlew*, 469 B.R. 666, 672 (Bankr. S.D. Tex. 2012) (discussing *See Stern v. Marshall*, --- U.S. ---, 131 S.Ct. 2594, 180 L.Ed. 2d 475

---

[1] At the time of the filing of this Motion, the Houston center was operating. However, the Trustee anticipates that the Houston facility will be shut down in the near term due to lack of funds to pay operating expenses.

(2011)). In the alternative, a utility service provider's ability to cut off service to a Chapter 11 debtor on account of a pre-petition claim is an essential bankruptcy matter which triggers the "public rights" exception. *See Id.*

### III.
### RELEVANT BACKGROUND FACTS

6.  The Debtor is a Texas corporation organized in 1996, which has served as the management and administrative core of the surgical centers, clinics, laboratories and related businesses owned and/or controlled, directly or indirectly, by Brown. Specifically, the Debtor has been responsible for collecting and administering accounts receivable for each of the surgery centers and their affiliates in exchange for a percentage fee. Historically, the Debtor has collected the receivables and remitted funds in accordance with its agreements, including funds to pay for the operating expenses for the various surgery centers, clinics, and laboratories. However, in recent months, the Debtor's business has slowed considerably due largely to inadequate capital and lack of available funds to pay for advertising, the primary revenue driver for Brown's business model.

7.  On January 23, 2013, Brown filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Florida (the "Florida Bankruptcy Court"). On March 13, 2013, the Florida Bankruptcy Court entered an Order Dismissing Case with Conditions and Reservation of Jurisdiction [Case No. 13-35892, Doc. No. 201] (the "Dismissal Oder"), and appointed General David L. Grange (the "CRO") as Chief Restructuring Officer for Brown's business entities, including BMC.

8.  On September 11, 2013, the CRO filed an Emergency Motion to Reinstate Case, Appoint Chapter 11 Trustee, and Transfer Venue [Case No. 13-35892, Doc. No. 424] (the "Motion to Reinstate"). The CRO reported that his investigations of the BMC and other entities

revealed that immediate action was required to save those companies from financial failure. The CRO further reported that his investigation with respect to the BMC had uncovered significant financial debt, misuse of revenue, and compliance issues. Lastly, the CRO reported that a bankruptcy filing for the BMC was likely immanent.

9. On September 24, 2013, the Florida Bankruptcy Court granted the CRO's Motion to Reinstate, reinstating the Chapter 11 case, directing the appointment of a Chapter 11 Trustee, and transferring venue for the case to this Court. [Case No. 13-35892, Doc. No. 435]. Brown's individual Chapter 11 case is presently pending in this Court, before the Honorable Jeff Bohm, in Case No. 13-35892 (the "Brown Individual Case").

10. On September 30, 2013, this Court entered an order approving the appointment of the Trustee as the Chapter 11 Trustee for Brown's bankruptcy estate. [Case No. 13-35892, Doc. No. 457].

11. On October 11, 2013, this Court issued an *Order Granting Emergency Motion of Chapter 11 Trustee for Authority to Act on Behalf of Business Entities in the Brown Individual Case* [Case No. 13-35892, Doc. No. 548] (the "Authority Order"). The Authority Order grants the Trustee, among other things, authority to exercise any and all rights associated with Dr. Brown's bankruptcy estate's 100% ownership interest in the Debtor, including but not limited to taking any and all action to vest the Trustee "with full authority to act on behalf of, manage, and direct personnel for" BMC. Also on October 11, 2013, this Court issued an Order authorizing the Trustee to file bankruptcy proceeding for BMC and certain other business entities, [Case No. 13-35892, Doc. No. 552] (the "Bankruptcy Authority Order"). Pursuant to the Authority Order and the Bankruptcy Authority Order, on October 15, 2013 (the "Petition Date"), the Trustee authorized the filing of a voluntary Chapter 11 petition initiating this case.

## IV.
## RELIEF REQUESTED

12. In connection with the operation of its business, the Debtor currently utilizes electricity, water, phone services, internet services and/or similar services (the "Utility Services") provided by various utility companies. The utility companies with respect to the Motion include, without limitation, Century Link for internet service, the Cities of Houston for water service, AT&T, Sprint, and Verizon Wireless for phone service, EXCEL for telecommunications service, CyrusOne for data center service, Republic Waste for waste disposal service, and Reliant and Center Point for electricity and energy service (collectively, the "Utility Companies").

13. Section 366(a) of the Bankruptcy Code prevents utility companies from discontinuing, altering, or refusing service to a debtor during the first 20 days of a chapter 11 case. If a debtor has not furnished adequate assurance of payment within 30 days of the commencement of the debtor's chapter 11 case, a utility company has the option of terminating its services pursuant to section 366(c)(2) of the Bankruptcy Code.

14. Due to the nature of the Debtor's business, it is important that Utility Services continue uninterrupted. If any of the Utility Companies were permitted to terminate its services on the 31st day after the Petition Date, the Debtor may be forced to suspend its operations in order to pay whatever amounts are demanded by the Utility Companies—a result clearly antithetical to the reorganization goal of Chapter 11.

15. The Debtor has filed a motion to pay for certain of the Utility Services in accordance with a final cash collateral order. The Debtor intends to pay its post-petition obligations owed to critical Utility Companies in a timely manner, and believes that there will be sufficient funds available to do so, pending approval of a final cash collateral budget.

16. The Utility Companies are protected by § 503(b)(1)(a) of the Bankruptcy Code, which provides that any post-petition utility charges constitute actual and necessary expenses of the preserving of the Debtor's estate, entitling the Utility Companies to an administrative expense claim under § 507(a)(1) of the Bankruptcy Code. As such, the administrative expense priority given to the Utility Companies as adequate assurance will be sufficiently covered.

17. Section 366(c)(1) of the Bankruptcy Code provides that "assurance of payment" of post-petition charges may consist of "(i) a cash deposit; (ii) a letter of credit; (iii) a certificate of deposit; (iv) a surety bond; (v) a prepayment of utility consumption; or (vi) another form of security that is mutually agreed on between the utility and the debtor or the trustee." 11 U.S.C. § 366(c)(1)(A).

18. As an assurance to certain Utility Companies the Debtor deems to be critical to the continued operation of its business, the Debtor proposes to pay a cash deposit to those Utility Companies in the amount of the average charge for two (2) weeks' worth of service (the "Adequate Assurance Deposit"), to be deemed sufficient adequate assurance of future payment. The Debtor proposes to provide the Adequate Assurance Deposit to any Utility Company that requests in writing no more than ten (10) business days following the entry of an order granting this Motion. As a condition to requesting and accepting an Adequate Assurance Deposit, the requesting Utility Company shall be deemed to have stipulated that the Adequate Assurance Deposit constitutes adequate assurance of payment to such Utility Company within the meaning of § 366 of the Bankruptcy Code.

## V.
## ADEQUACY OF PROPOSED ADEQUATE ASSURANCE

19. The Debtor submits that the Adequate Assurance Deposit, in conjunction with the Debtor's ability to pay for critical Utility Services post-petition in the ordinary course of business

(collectively, the "Proposed Adequate Assurance"), constitutes adequate assurance of payment for post-petition Utility Services. Accordingly, upon the tenth (10th) day following the filing of this Motion, any Utility Company that fails to timely request an Adequate Assurance Deposit, or otherwise file a Qualified Objection to this Motion in accordance with the procedure set forth below, shall be deemed to have received adequate assurance of payment as required by § 366 of the Bankruptcy Code and shall be prohibited from discontinuing, altering, or refusing to provide Utility Services to the Debtor.

## VI.
## OBJECTIONS TO THE PROPOSED ADEQUATE ASSURANCE

20. In light of the severe consequences to the Debtor and its operations from any interruption in Utility Services, but recognizing the right of the Utility Companies to evaluate the Proposed Adequate Assurance, the Debtor requests that any Utility Company not satisfied with the Proposed Adequate Assurance must (i) file an objection within ten (10) days of the filing of this Motion, which objection shall (a) be in writing, (b) set forth the amount and form of additional assurance of payment requested, (c) set forth a description of the Utility Services provided, (d) include a summary of the Debtor's payment history to such Utility Company, including any security deposits, and (e) set forth why the Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of payment; and (f) be served upon the Debtor (a "Qualified Objection").

21. The Court will determine the adequacy of the Proposed Adequate Assurance with respect to all Qualified Objections not resolved prior to the hearing on a final order pursuant to § 366(c) of the Bankruptcy Code.

22. Absent compliance with the procedures set forth herein to request an Adequate Assurance Deposit or final adjudication of a timely objection to the Proposed Adequate

Assurance in favor of a Utility Company, the Utility Companies will be forbidden from altering, refusing, or discontinuing Utility Services as a result of any unpaid pre-petition charges, or the Debtor's failure to provide additional adequate assurance of payment other than the Proposed Adequate Assurance.  In addition, pending the entry of an order with respect to this Motion, the Utility Companies are prohibited from discontinuing, altering, or refusing Utility Service to the Debtor.

## VII.
## LEGAL AUTHORITY

23. The relief requested herein is supported by § 366 of the Bankruptcy Code, which provides, in relevant part:

> (a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for relief was not paid when due.
>
> (b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date.  On request of a a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.
>
> . . . .
>
> (c)(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

11 U.S.C. § 366.

24. Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after commencing its case.  Under that section, a

utility company may not, during the first twenty (20) days of a Chapter 11 case, alter, refuse, or discontinue services to a debtor solely because of unpaid prepetition amounts. A utility company may, however, do so if, during the 30-day period following a petition date, the debtor has not provided "adequate assurance" of payment for post-petition services in a form "satisfactory" to the utility, subject to the Court's ability to modify the amount of adequate assurance. *See Jones v. Boston Gas Co. (In re Jones)*, 369 B.R. 745, 748-49 (B.A.P. 1st Cir. 2007) ("Based on a debtor's failure to provide adequate assurance of payment, bankruptcy courts have concluded that § 366 . . . grants utilities the unilateral right to terminate service."); *St. Torrance v. Cincinnati Gas & Elec. Co. (In re St. Torrance)*, No. 06-8090, 2007, Bankr. LEXIS 3180, at *8 (B.A.P. 6th Cir. Sept. 26, 2007) (same). Furthermore, pursuant to changes made effective by BAPCPA, in determining whether an assurance of payment is adequate, the Court may not consider (i) the absence of security before the petition date, (ii) the debtor's history of timely payments, or (iii) the availability of an administrative expense priority. 11 U.S.C. § 366(c)(3)(B).

25.     The Debtor believes that the Proposed Adequate Assurance is reasonable and satisfies the requirements of § 366 of the Bankruptcy Code. The Proposed Adequate Assurance requested in this Motion is similar to the types of adequate assurance of payment granted in other recent Chapter 11 cases. *See, e.g.*, *In re Sharper Image Corp.*, Case No. 08-10322 (KG) (Bankr. D. Del. Mar. 12, 2008) (approving adequate assurance to requesting utilities in an amount equal to two weeks deposit); *In re Charys Holding Company, Inc., and Crochet & Borel Services, Inc.*, Case No. 08-10289 (BLS) (Bankr. D. Del. Mar. 10, 2008) (same); *In re Am. LaFrance, LLC*, Case No. 08-10178 (BLS) (Bankr. D. Del. Feb. 21, 2008) (same); *In re Fedders North America, Inc., et al.*, Case No. 07-11176 (BLS) (Bankr. D. Del. Sept. 13, 2007) (approving adequate

assurance consisting of a cash deposit equal to the approximate aggregate cost of two weeks of utility service).

26. Further, the Court possesses the power under § 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The proposed procedures will ensure that the Utility Services are continued without prejudicing the Utility Companies and will allow the Debtor to fulfill its obligations under the Bankruptcy Code.

27. Based on the foregoing, the Debtor submits that the relief requested herein is necessary and appropriate, is in the best interest of the estate and its creditors, and should be granted in all respects. The relief requested herein will ensure that the Debtor's operations will not be disrupted. If a disruption occurs, the impact on the Debtor's business operations and revenues will be detrimental to the estate and its creditors. The relief requested provides the Utility Companies with a fair and orderly procedure for requesting an Adequate Assurance Deposit and for seeking additional or different adequate assurance from that proposed by the Debtor. Without these procedures, the Debtor could be forced to address requests by Utility Companies in a disorganized manner at a critical period in this Chapter 11 case and during a time when the Debtor's efforts could be more productively focused on the continuation of its operations for the benefit of creditors and parties in interest.

WHEREFORE, the Debtor respectfully requests that the Court schedule an emergency hearing on this Motion on or before October 25, 2013, grant the relief requested herein, and grant such other and further relief in favor of the Debtor as the Court may deem just and proper.

EMERGENCY MOTION PURSUANT TO SECTIONS 105(a) AND 366 OF THE BANKRUPTCY CODE
TO: (I) APPROVE THE DEBTOR'S PROPOSED ADEQUATE ASSURANCE OF PAYMENT FOR POST-PETITION UTILITY SERVICES, (II) ESTABLISH PROCEDURES FOR RESOLVING OBJECTIONS BY
UTILITY COMPANIES, AND (III) PROHIBIT UTILITIES FROM ALTERING OR DISCONTINUING SERVICE        PAGE 11

Respectfully Submitted,

By: */s/ Spencer D. Solomon*_____
    Gretchen G. McCord
    Texas Bar No.  00798203
    gmccord@nathansommers.com
    Spencer D. Solomon
    Texas Bar No.  24066117
    ssolomon@nathansommers.com
    Richard A. Kincheloe
    Texas Bar No. 24068107
    rkincheloe@nathansommers.com

Nathan Sommers Jacobs,
A Professional Corporation
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056
(713) 960-0303 (main)
(713)892-4800 (fax)

 **PROPOSED ATTORNEYS FOR BROWN MEDICAL CENTER, INC., DEBTOR-IN-POSSESSION**

## CERTIFICATE PURSUANT TO LOCAL BANKRUPTCY RULE 9013-1(f)

A certificate of service for the foregoing Motion will be served upon all necessary parties within 24-hours of the filing of the Motion in accordance with Local Bankruptcy Rule 9013-1(f).

*/s/ Spencer D. Solomon*_____
Spencer D. Solomon

## CERTIFICATE OF ACCURACY

The undersigned certifies that the facts contained in the foregoing Motion are true and correct to the best of his knowledge.

*/s/ Spencer D. Solomon*_____
Spencer D. Solomon