UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 13-35892-H4-11 |
| MICHAEL GLYN BROWN, | § | |
| | § | CHAPTER 11 |
| DEBTOR | § | (Jointly Administered) |

**EMERGENCY MOTION FOR: (I) APPOINTMENT OF CHAPTER 11 TRUSTEE FOR BROWN MEDICAL CENTER, INC.; AND (II) APPOINTMENT OF CHIEF RESTRUCTURING OFFICER FOR ESSENTIAL BUSINESS ENTITIES**
(Hearing requested on or before October 25, 2013)

Pursuant to Local Rule 9013:

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**EMERGENCY RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EMERGENCY BASIS, THEN YOU WILL HAVE LESS THAN 21 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

TO THE HONORABLE JEFF BOHM, CHIEF UNITED STATES BANKRUPTCY JUDGE:

Ronald J. Sommers (the "Trustee"), in his dual capacity as Chapter 11 Trustee for the bankruptcy estate of Michael G. Brown ("Brown") and authorized representative of Brown Medical Center, Inc. ("BMC"), debtor-in-possession, files this *Emergency Motion for: (i) Appointment of Chapter 11 Trustee for Brown Medical Center, Inc.; and (ii) Appointment of Chief Restructuring Officer for Essential Business Entities* (the "Motion"), and would show the Court as follows:

## I. CAUSE FOR EMERGENCY CONSIDERATION

1. BMC is a management company that has historically served as the epicenter of the operating business enterprise directly or indirectly owned or controlled by Michael Glyn Brown ("Brown"), including the six (6) surgery centers and related facilities in Houston, Austin, Dallas, San Antonio, Las Vegas, and Phoenix. The business entities owned and/or controlled by Brown have historically sustained themselves through BMC's collection of receivables and payment of expenses. However, BMC's revenue from receivables has drastically decreased, leaving BMC with insufficient funds to meet its own financial obligations and those of its affiliated entities. As a result, all of the surgery centers have ceased operations other than performance of the limited administrative functions necessary for continued maintenance of records and collection of receivables. Though BMC has reduced its staff considerably, a number of employees remain with the company to perform the above-described function.

2. On October 15, 2013, the Trustee initiated Chapter 11 bankruptcy proceedings for BMC. Pursuant to this Court's prior order granting him management authority over BMC and other business entities, the Trustee serves as the authorized representative of BMC as debtor-in-possession in addition to his role as Chapter 11 Trustee of Brown's individual bankruptcy estate. As set forth in greater detail below, the Trustee's dual roles as a fiduciary for the creditors of

both the bankruptcy estate of BMC, on the one hand, and the bankruptcy estates of Brown and certain Non-Essential Entities, on the other hand, creates an apparent conflict of interest which is likely to mature into an actual conflict of interest in the future. Accordingly, the Trustee believes that a separate Chapter 11 Trustee should be appointed for BMC and that a Chief Restructuring Officer should be appointed for the Essential Business Entities related to BMC's business. Emergency consideration is necessary because BMC is a debtor-in-possession in Chapter 11 bankruptcy proceedings, which imposes upon BMC and its agents numerous duties and considerations that must be addressed expediently. BMC is presently considering offers from multiple interested parties to purchase its assets and those of its affiliates. In addition, BMC is considering a time-sensitive proposal for debtor-in-possession financing. The Trustee does not believe it is appropriate for him to continue acting on BMC's behalf in light of the apparent conflicts of interest and that a Chapter 11 Trustee should be appointed immediately to handle the numerous matters BMC will face in the upcoming days and weeks.

## II. JURISDICTION, VENUE, & CONSTITITIONAL AUTHORITY

1.  The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This particular motion involves a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

2.  Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.  This Court has constitutional authority to enter a final order regarding the appointment of a Chapter 11 Trustee for BMC and for the appointment of a chief restructuring officer for entities related to BMC that are owned and/or controlled by Brown's bankruptcy estate and the Trustee. 11 U.S.C. §§ 363(b)(1) and 1104(a) have no equivalent in state law, thereby rendering the Supreme Court's opinion in *Stern v. Marshall* inapplicable. *See In re*

*Carlew*, 469 B.R. 666, 672 (Bankr. S.D. Tex. 2012) (discussing *See Stern v. Marshall*, --- U.S. ---, 131 S.Ct. 2594, 180 L.Ed. 2d 475 (2011)). In the alternative, appointment of a Chapter 11 Trustee for BMC and a disinterested control person for entities owned and/or controlled by the Brown bankruptcy estate are essential bankruptcy matters which triggers the "public rights" exception. *See Id.*

### III. RELEVANT FACTUAL BACKGROUND

**A.    PROCEDURAL HISTORY**

4.     On January 23, 2013, Brown filed a voluntary Chapter 11 petition in the United States Bankruptcy Court for the Southern District of Florida (the "Florida Bankruptcy Court"). On March 13, 2013, the Florida Bankruptcy Court entered an Order Dismissing Case with Conditions and Reservation of Jurisdiction [Case No. 13-35892, Doc. No. 201] (the "Dismissal Oder"), and appointed General David L. Grange (the "CRO") as Chief Restructuring Officer for Brown's business entities, including BMC.

5.     On September 11, 2013, the CRO filed an Emergency Motion to Reinstate Case, Appoint Chapter 11 Trustee, and Transfer Venue [Case No. 13-35892, Doc. No. 424] (the "Motion to Reinstate"). The CRO reported that his investigations of the BMC and other entities revealed that immediate action was required to save those companies from financial failure. The CRO further reported that his investigation with respect to the BMC had uncovered significant financial debt, misuse of revenue, and compliance issues. Lastly, the CRO reported that a bankruptcy filing for the BMC was likely immanent.

6.     On September 24, 2013, the Florida Bankruptcy Court granted the CRO's Motion to Reinstate, reinstating the Chapter 11 case, directing the appointment of a Chapter 11 Trustee, and transferring venue for the case to this Court. [Case No. 13-35892, Doc. No. 435]. Brown's

individual Chapter 11 case is presently pending in this Court, in Case No. 13-35892 (the "Brown Individual Case").

7. On September 30, 2013, this Court entered an order approving the appointment of the Trustee as the Chapter 11 Trustee for Brown's bankruptcy estate. [Case No. 13-35892, Doc. No. 457].

8. Seeing that Brown's business entities, including BMC, were in a state of financial crisis demanding immediate action, on October 2, 2013, the Trustee filed an *Emergency Motion for Authority to Act on Behalf of Business Entities*, [Doc. No. 469] (the "Authority Motion"). The purpose of the Authority Motion was to allow the Trustee to immediately exercise the estate's rights in order to take immediate action on behalf of those entities to mitigate the risks and adverse consequences of their severe cash flow difficulties.

9. On October 11, 2013, this Court issued an *Order Granting Emergency Motion of Chapter 11 Trustee for Authority to Act on Behalf of Business Entities in the Brown Individual Case* [Case No. 13-35892, Doc. No. 548] (the "Authority Order"). The Authority Order granted the Trustee, among other things, authority to exercise any and all rights associated with Dr. Brown's bankruptcy estate's rights with respect to all entities owned and/or controlled by Brown, including but not limited to taking any and all action to vest the Trustee "with full authority to act on behalf of, manage, and direct personnel for" BMC and its affiliates.

10. Also on October 11, 2013, this Court issued an Order authorizing the Trustee to file bankruptcy proceeding for BMC and certain other business entities, [Case No. 13-35892, Doc. No. 552] (the "Bankruptcy Authority Order").

11. Pursuant to the Authority Order and the Bankruptcy Authority Order, on October 15, 2013 (the "Petition Date"), the Trustee authorized the filing of a voluntary Chapter 11

petition for BMC initiating Case No. 13-36405, which is being jointly administered with Brown's case.

### B. THE ESSENTIAL BUSINESS ENTITIES

12. Prior to filing for bankruptcy protection, Brown owned and/or controlled myriad business entities to carry out his medical services enterprise. The heart of that enterprise was BMC, a Texas corporation organized in 1996, which has served as the management and administrative core of the surgical centers, clinics, laboratories and related businesses owned and/or controlled, directly or indirectly, by Brown. Specifically, BMC has been responsible for collecting and administering accounts receivable for each of the surgery centers and their affiliates in exchange for a percentage fee. Historically, BMC has collected the receivables and remitted funds in accordance with its agreements, including funds to pay for the operating expenses for the various surgery centers, clinics, and laboratories. However, in recent months, BMC's business has slowed considerably, due largely to inadequate capital and lack of available funds to pay for advertising, the primary revenue driver for Brown's business model.

13. The business entities owned and/or controlled directly or indirectly by the Debtor associated with BMC's essential business operations are set forth in **Exhibit A** (collectively, the "Essential Business Entities"). Certain of the Essential Business Entities conducted the surgical centers, laboratories, and clinics managed by BMC. Others served as holding companies for stock and/or membership interests and historically served as a means for Brown to incentivize business partners while maintaining control over the business. While many of the Essential Business Entities will likely not yield value for Brown's individual bankruptcy estate, certain entities such as BHCF, LLC (which holds franchising rights but has few creditors) may yield value for equity holders. To the extent any Essential Business Entity may have value in its

equity, the Trustee anticipates administering such value for Brown's creditors, notwithstanding the appointment of a separate Chapter 11 Trustee or CRO for BMC and the Essential Business Entities.

### C. THE NON-ESSENTIAL ENTITIES

14. The Brown estate also owns or holds controlling shares of equity interests in a number of other business entities, which hold valuable real and personal property assets but do not generate revenue. Those entities are Lionheart Company, Inc., Superior Vehicle Leasing Co., Inc., Prorentals, Inc., Castlemane, Inc., MG Brown Company, LLC, ProMed, LLC, and Estasi Photoart Publishing, LLC. In addition, the Debtor owns 100% of the stock in Instratek, Inc., a medical device company that is largely unrelated to BMC and the Essential Business Entities. Lionheart Company, Inc., Superior Vehicle Leasing Co., Inc., Prorentals, Inc., Castlemane, Inc., MG Brown Company, LLC, ProMed, LLC, Estasi Photoart Publishing, LLC, and Instratek, Inc. are collectively referred to herein as the "Non-Essential Entities." With the exception of Instratek, Inc., the Non-Essential Entities do not produce any meaningful income or appreciation; however, each of them owns valuable assets, which, in most cases, were acquired for the benefit of Brown, such as vehicles, residential properties, aircraft, and leisure watercraft.

15. Historically, BMC and the surgical businesses either directly paid or provided funds to pay substantially all of the expenses associated with certain of the Non-Essential Entities. The cash flow of the operating entities is no longer sufficient to fund the obligations of the Non-Essential Entities. The Trustee is exploring a potential sale of certain assets held by the Non-Essential Entities to fund critical expenses, to reduce the burden of preserving and maintaining those assets, and to yield net cash for distribution to their respective creditors. The Trustee intends to sell the assets of the Non-Essential Entities that have filed for bankruptcy

protection in his capacity as Chapter 7 Trustee for certain of those entities. The Trustee has also received offers to purchase the Brown estate's stock in Instratek, Inc., which the Trustee is considering. For the most part, Instratek, Inc. was operated distinctly and separately from BMC and the Essential Business Entities, with different creditors and different management personnel.

### D. THE NEED FOR SEPARATE FIDUCIARIES

16. While reviewing the corporate records of BMC and its affiliates in preparation for filing schedules and a statement of financial affairs for BMC, the Trustee has discovered a number of issues that create an apparent, potential conflict of interest *vis a vis* the respective bankruptcy estates of BMC on the one hand, and Brown and certain of the Non-Essential Entities on the other. Specifically, it appears that, among other things, Brown syphoned funds from BMC to pay for certain items unrelated to BMC's business. In addition, it appears that BMC and other Essential Business Entities under Brown's control may have claims against Brown arising under Chapter 5 of the Bankruptcy Code and applicable state law. In light of these issues, the Trustee does not believe it is appropriate that he represent the Essential Business Entities (i.e. BMC and the other entities affiliated with the Debtor's medical services business) along with Brown's estate and the estates of the Non-Essential Entities. Accordingly, the Trustee believes that the Court should appoint a Chapter 11 Trustee for BMC and should also appoint a Chief Restructuring Officer ("CRO") with exclusive authority to manage, control, and direct the affairs of the Essential Business Entities.

17. The Trustee proposes that the Court appoint Wayne B. Fuquay for that purpose. Mr. Fuquay is a Certified Turnaround Professional who presently serves as Managing Director for Wayne Fuquay & Associates, Inc. ("WFA"). Mr. Fuquay has 26 years of experience in restructuring businesses in financial crisis, with engagements in a wide variety of business

sectors. Mr. Fuquay and WFA are particularly involved in the health sector with qualifications in institutional and community based services. In 2001, WFA was engaged to represent secured creditors in a large health bankruptcy in Houston, which led to Mr. Fuquay's appointment as a Director to an international healthcare organization, Kissito Healthcare, Inc. ("Kissito"). Over the last 12 years, Mr. Fuquay has served as a director and advisor of Kissito and is currently the Chairman of its Audit Committee and is a member of its Executive Committee. Mr. Fuquay is also currently a member of the Board of Directors of Kissito PACE of Roanoke, Inc. and Kissito PACE of Houston, Inc., both of which are Medicare and Medicaid insurance programs that contract for all physician and other health services.

18. Mr. Fuquay's experience encompasses health care operations around the world including hospitals, nursing homes, outpatient treatment centers, physician services, and health insurance services. His experience with operations of businesses in BMC's core industry and his accrued experience in this field provide a unique set of skills for the restructuring of BMC and the Essential Business Entities. A true and correct copy of Mr. Fuquay's curriculum vitae is attached hereto as **Exhibit B**. Mr. Fuquay's affidavit addressing his disinterestedness and lack of adverse interest to the estates of Brown and of BMC is attached hereto as **Exhibit C**. The Trustee has interviewed Mr. Fuquay and briefed him on the status of the Essential Business Entities. Based upon that interview and Mr. Fuquay's prior experience, the Trustee strongly believes that Mr. Fuquay's experience uniquely qualifies him for the position of Chapter 11 Trustee for BMC and as CRO for the Essential Business Entities.

## IV. BASIS FOR RELIEF

A. APPOINTMENT OF CHAPTER 11 TRUSTEE FOR BMC

19. "[T]he appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served." *In re SunCruz Casinos, LLC*, 298 B.R. 821, 828 (Bankr. S.D. Fla. 2003) (quoting *In re Intercat*, 247 B.R. 911, 920 (Bankr. S.D. Ga. 2000)); *see also In re V. Savino Oil & Heating Co.*, 99 B.R. 518, 525-26 (Bankr. E.D.N.Y. 1989) ("Section 1104(a) represents a potentially important protection that courts should not lightly disregard or encumber with overly protective attitudes towards debtors-in-possession").

20. The Bankruptcy Code provides for the appointment of a chapter 11 trustee on two alternative grounds. Section 1104(a)(l) provides for the appointment of a trustee for "cause." *See* 11 U.S.C. § 1104(a)(l). "Cause" is defined to include "fraud, dishonesty, incompetence or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case." Furthermore, even where "cause" is not established, section 1104(a)(2) provides for the appointment of a trustee "if such appointment is in the interests of creditors . . . and other interests of the estate". See 11 U.S.C. § 1104(a)(2).

21. With respect to the appointment of a chapter 11 trustee for "cause," § 1104(a)(l) of the Bankruptcy Code provides, in pertinent part, that the court shall order the appointment of a trustee:

> for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a)(l). While section 1104(a)(l) expressly identifies four bases upon which "cause" may be found – fraud, dishonesty, incompetence and gross mismanagement – these enumerated grounds are not exclusive, and additional grounds may be available. *See, e.g., Savino Oil*, 99 B.R. at 525; *In re Sharon Steel Corp.*, 871 F.2d 1217, 1226 (3d Cir. 1989). Importantly,

once a court finds that "cause" exists, a trustee must be appointed, the court has no discretion to deny the requested relief. *See Savino Oil*, 99 B.R. at 525; *In re Deena Packaging Indus., Inc.*, 29 B.R. 705, 706 (Bankr. S.D.N.Y. 1983).

22. With respect to appointment of a chapter 11 trustee in the best interest of the estate and its creditors, § 1104(a)(2) of the Bankruptcy Code provides, in pertinent part, that the court shall order the appointment of a trustee "if such appointment is in the interest of creditors . . . and other interests of the estate . . .." 11 U.S.C. § 1104(a)(2). Thus, even where no "cause" exists, section 1104(a)(2) creates a flexible standard whereby the court shall appoint a trustee when it is in the best interests of the creditors and the estate. In determining the best interests of creditors and the estate, courts "resort to [their] broad equity powers .... [e]quitable remedies are a special blend of what is necessary, what is fair and what is workable." *See In re Hotel Assocs., Inc.*, 3 B.R. 343, 345 (Bankr. E.D. Pa. 1980); *see also In re Wings Digital Corp.*, 2005 WL 3789334, at *4-5 (Bankr. S.D.N.Y. May 16, 2005) (noting that section 1104(a)(2) is a "lesser standard" than section 1104(a)(l)). In exercising their equitable powers to appoint a trustee under section 1104(a)(2), courts "eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests." *See Hotel Assocs.*, 3 B.R. at 345.

23. While none of the enumerated "cause" factors are present here, the Trustee nonetheless believes that the apparent conflict of interest posed by the Trustee acting as a fiduciary for the estates of both the Essential Business Entities and the Non-Essential Entities, constitutes "cause" for the appointment of a separate Chapter 11 Trustee for BMC and a separate CRO with exclusive decision-making authority for the Essential Business Entities. Such

apparent conflicts of interest also make the appointment of a separate control person for BMC and the Essential Business Entities in the best interest of the estate of BMC and its creditors.

24. Presently, the Trustee is a fiduciary for two bankruptcy estates with, in some respects, divergent interests. For example, the BMC estate may wish to pursue claims against Brown or certain of the Non-Essential Entities for funds used to pay those entities' expenses. The books and records of BMC also reflect various "note payable" obligations flowing to BMC from certain of the Non-Essential Entities. Moreover, BMC's estate may have claims against Brown based upon alleged breach of fiduciary duty, mismanagement, or some similar theory. On the other hand, the Brown estate may have some basis for contesting the liability or amount of such claims and may itself have claims against BMC and/or its affiliates for monies advanced pre-petition. Due to these apparent conflicts of interest (which are likely to mature into actual conflicts), "cause" exists for the appointment of a separate Chapter 11 Trustee for BMC's estate and such appointment is in the best interest of the BMC estate and its creditors.

25. Accordingly, appointment of a separate Chapter 11 Trustee for BMC is warranted under both sections 1104(a)(l) or 1104(a)(2). The Trustee believes that Mr. Fuquay is well qualified for such appointment and, subject to approval by the Chapter 11 Trustee, requests that Mr. Fuquay be so appointed, effective as of October 18, 2013. Moreover, the Trustee proposes that he be permitted to consult with Mr. Fuquay on all matters related to administration of BMC's estate until October 28, 2013, provided that the Trustee shall have no decision making authority over BMC or the Essential Business Entities during such interim period; but rather shall make himself available to assist Mr. Fuquay in a consulting capacity only.

**B.     APPOINTMENT OF CRO FOR BMC-RELATED ENTITIES**

26. Due to the apparent conflicts of interest described above, the Court should exercise its equitable powers to appoint a Chief Restructuring Officer for the Essential Business Entities will full and exclusive authority to manage, act on behalf of, and direct the affairs and personnel of the Essential Business Entities. Appointment of a separate, disinterested fiduciary for BMC and the Essential Business Entities will foster public confidence in the bankruptcy system. *See Smith v. Concord Coal Corporation (In re Concord Coal Corporation)*, 11 B.R. 552 (Bankr. S.D. W. Va. 1981) (appointment of trustee was justified by substantial doubt as to whether the debtor's current management could gain and maintain the confidence of secured creditors and lenders sufficiently to continue debtor's operations); *see also In re Sun Cruz Casinos*, LLC, 298 B.R. 821, 831 (Bankr. S.D. Fla. 2003) (finding that due to conflict of loyalty "it is highly improbable that the Debtor can maintain the confidence of unsecured creditors and the secured lenders in sufficient measure to support rehabilitation."). Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105. It is within the Court's equitable power under § 105(a) to ensure that the public confidence in the bankruptcy system is maintained by appointing a disinterested CRO to direct the Essential Business Entities.

27. As described above, the Trustee does not believe it is appropriate for him to serve in dual fiduciary capacities for entities that may have divergent interests. While the Trustee would certainly do his best to remain neutral and even-handed, he also has a duty to vigorously represent the bankruptcy estates which he is charged with administering. It would not be fair to creditors or to the Court to have the Trustee serve in conflicting capacities, even if such conflicts are merely apparent or potential. The creditors of the Essential Business Entities and of BMC's estate have a right to vigorous and single-minded representation of their interests. The Trustee is

sensitive to the fact that certain of the Essential Business Entities may have value in their equity that may flow to the Brown estate as the majority equity holder. Accordingly, in addition to the appointment of Mr. Fuquay as CRO, the Trustee requests that, within 30-days following the entry of an order granting this Motion, Mr. Fuquay provide the Trustee with an accounting with respect to all Essential Business Entities, including but not limited to BHCF, LLC, for which value may exist in the equity.

WHEREFORE, the Trustee respectfully requests that the Court schedule an emergency hearing on this Motion on or before October 25, 2013, and that the Court enter an order: (a) appointing Wayne B. Fuquay as Chapter 11 Trustee for BMC's bankruptcy estate, effective as of October 18, 2013; (b) appointing Wayne B. Fuquay as Chief Restructuring Officer of the Essential Business Entities, with exclusive decision-making authority over the Essential Business Entities; (c) permit the Trustee to assist Mr. Fuquay in his new duties in a consulting capacity only until the tenth (10th) day following the entry of an order granting this Motion, following which date, the Trustee shall be released from all further duties and obligations with respect to BMC and the Essential Business Entities; and (d) directing Mr. Fuquay, within 30-days following the entry of an order granting this Motion, to provide the Trustee with an accounting with respect to all Essential Business Entities, including but not limited to BHCF, LLC, for which value may exist in the equity. The Trustee also requests that the Court and grant such other and further relief in favor of the Trustee as the Court may deem just and proper.

[Signature Block on Following Page]

Respectfully Submitted,

By: */s/ Spencer D. Solomon*
    Gretchen G. McCord
    Texas Bar No. 00798203
    gmccord@nathansommers.com
    Spencer D. Solomon
    Texas Bar No. 24066117
    ssolomon@nathansommers.com
    Richard A. Kincheloe
    Texas Bar No. 24068107
    rkincheloe@nathansommers.com

Nathan Sommers Jacobs,
A Professional Corporation
2800 Post Oak Blvd. 61st Floor
Houston, TX 77056
(713) 960-0303 (main)
(713) 892-4800 (fax)

**PROPOSED ATTORNEYS FOR RONALD J. SOMMERS, CHAPTER 11 TRUSTEE**

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 21, 2013, a true and correct copy of the foregoing Motion was served electronically on all parties registered to receive electronic notice of filings in this case via this Court's ECF notification system, and via First Class U.S. Mail upon all parties listed on the attached Service List.

*/s/ Spencer D. Solomon*_____
Spencer D. Solomon

## CERTIFICATE OF ACCURACY

The undersigned certifies that the facts contained in the foregoing Motion are true and correct to the best of his knowledge.

*/s/ Spencer D. Solomon*_____
Spencer D. Solomon