UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BROWN MEDICAL CENTER, INC., | § | CASE NO. 13-36405 |
| | § | |
| Debtor. | § | Chapter 11 |

**TRUSTEE'S EXPEDITED MOTION TO APPROVE
(I) SALE PROCEDURE AND FORM OF NOTICE; AND (II) BID PROTECTIONS**

**MOVANT HAS REQUESTED AN EXPEDITED HEARING IN THIS MATTER ON DECEMBER 4, 2013, at 2:00 P.M. IN COURTROOM 600, 515 RUSK, HOUSTON, TEXAS 77002.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING, UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY-THREE DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**EXPEDITED RELIEF HAS BEEN REQUESTED. IF THE COURT CONSIDERS THE MOTION ON AN EXPEDITED BASIS, THEN YOU WILL HAVE LESS THAN 23 DAYS TO ANSWER. IF YOU OBJECT TO THE REQUESTED RELIEF OR IF YOU BELIEVE THAT THE EXPEDITED CONSIDERATION IS NOT WARRANTED, YOU SHOULD FILE AN IMMEDIATE RESPONSE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**To the Honorable Jeff Bohm,
Chief United States Bankruptcy Judge:**

Elizabeth M. Guffy ("Trustee"), the chapter 11 trustee of Brown Medical Center, Inc. ("BMC" or the "Debtor"), files this Expedited Motion to Approve (i) Sale Procedure and Form of Notice; and (ii) Bid Protections.

**Nature of the Motion**

1.      During the last 45 days, the Trustee has solicited offers from more than 15 parties who previously expressed an interest in purchasing the Debtor's surgical center assets. The Trustee has received multiple offers to purchase these assets free and clear of all liens, claims, interests and encumbrances under 11 U.S.C. §§ 363(b) and (f). The combination of the two bids set forth below resulted in the highest aggregate price. Specifically, (i) Northstar Healthcare Hand and Foot, LLC ("Northstar") has agreed to act as the stalking horse bidder for BMC's Dallas and Scottsdale assets for a cash purchase price of $750,000; and (ii) Renova Hand Centers, LLC ("Renova" and collectively with Northstar, the "Stalking Horse Bidders") has agreed to act as the stalking horse bidder for BMC's Austin ($825,000), San Antonio ($1,025,000), and Las Vegas ($650,000)[1] assets for a total cash purchase price of $2,500,000. In order to induce the Stalking Horse Bidders to serve as the stalking horse bidders in the sale process, the Trustee has agreed to certain bid procedures and protections. The Trustee seeks Court approval of these procedures and bid protections as set forth below.

**Background**

1.      On October 15, 2013, acting pursuant to authority granted by this Court, Ronald Sommers filed a voluntary petition on behalf of BMC for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On October 24, 2013, the Trustee was appointed as the chapter 11 trustee in BMC's case.

2.      On November 8, 2013, the Trustee filed an application to employ the Claro Group, LLC ("Claro") as financial advisor and consultant [Docket No. 57].

---

[1] This division of the purchase price is not reflected in the attached exhibit. However, the breakdown was confirmed in subsequent communications with Renova.

3515541v4

3.Claro and the Trustee began assembling marketing and due diligence materials to initiate a process designed to evaluate all options to sell BMC's operating assets.  The Trustee and Claro immediately began contacting interested parties regarding their interest in the Debtor's assets.  Several of these parties had previously been in contact with the former Chief Restructuring Officer, Gen. David Grange, and had begun their due diligence as early as the beginning of 2013.

4.These efforts resulted in eight indications of interest.  Claro fully explored each indication of interest that was received.  The Trustee ultimately received asset purchase agreements, term sheets, or committed letters of interest from four interested parties.  After extensive negotiations, the Trustee selected the two offers from the Stalking Horse Bidders to serve as the lead bids at the auction.  Copies of the Stalking Horse Bidders' offers (the "<u>Offers</u>") are attached as **<u>Exhibits 1 and 2</u>**.

5.The Offers, taken together, contemplate a sale of the Debtor's assets located at facilities in or near Dallas, Austin, San Antonio, Scottsdale, and Las Vegas.  However, certain parties expressed interest in and proposed transactions involving a single purchase of assets at all five locations, as well as BMC's assets located in or near Houston.  Accordingly, the Trustee seeks authority to conduct the auction and accept bids for any combination of the Debtor's assets, specifically including assets not currently contemplated by the Offers.  In other words, any of the Debtor's assets, whether or not specifically included in the Offers, may be bid on at the auction in any combination.

6.The Offers will be subject to higher and better bids.  Pursuant to the Offers, the Trustee has agreed to seek approval of a sale procedure, form of notice and certain bid protections as more fully set forth below.

3515541v4

**The Sale Procedure and Form of Notice**

7. The Trustee seeks approval of the following:

**Notice of Auction and Sale Hearing**. Within three (3) business days following the entry of an order approving this Motion, the Trustee will serve by first class mail a notice of the proposed sale containing the date of the Auction and Sale Hearing to: (i) all potential purchasers previously identified or solicited by the Trustee and/or Claro during this bankruptcy case; (ii) all other potentially interested parties identified by the Trustee and/or Claro (collectively, with the parties identified in (i) above, the "Potential Purchasers"); (iii) the Office of the United States Trustee; (iv) counsel for the Stalking Horse Bidders; (v) all parties who are known to possess or assert a lien, claim, encumbrance or interest in or upon any of the Purchased Assets (as defined in the Offers); (vi) all applicable United States, state and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the relief requested; and (vii) all parties on the most current master service list filed in this case.

**Qualified Bidders**. Only Qualified Bidders may participate in the bidding process. To become a Qualified Bidder, a potential bidder must on or before 5:00 p.m. Central Time on December 10, 2013 (i) execute and deliver to Claro a confidentiality agreement prepared by the Trustee, (ii) deposit with counsel for the Trustee an amount equal to 10% of the cash consideration in the Qualified Bidder's bid (each, the "Alternative Buyer's Deposit") which deposit shall be nonrefundable unless such Qualified Bidder is not the highest and best offer as determined by the Court; (iii) submit to the Trustee an unqualified and binding cash bid along with an executed written agreement ("Qualified Bids"); and (iv) provide financial and other information to Claro and the Trustee that allow them to make a reasonable determination as to such bidder's ability to consummate a sale as contemplated herein.

The Stalking Horse Bidders are and shall be deemed to be Qualified Bidders and parties in interest for all purposes. If no other Qualified Bidders are identified, the final form of the Offers between the Trustee and the Stalking Horse Bidders shall be deemed the Highest and Best Bid (as defined below). No letter of intent or other written proposal submitted to the Trustee prior to the filing of this Motion by any party other than the Stalking Horse Bidders shall constitute or be considered a Qualified Bid for purposes of these sale procedures. The Trustee, in consultation with her counsel and Claro, shall be responsible for conducting the bid and sale process.

**Notice of Qualified Bidders**. On or before 5:00 p.m. Central Time on December 11, 2013, the Trustee shall file a notice with the Court identifying all Qualified Bidders and attaching copies of all bids that were timely received. The Trustee shall serve a copy of the notice and the corresponding bids on all Qualified Bidders by (a) facsimile or electronic mail or (b) overnight delivery.

**Auction**.  If one or more timely Qualified Bids are received, an open auction for the Purchased Assets will be conducted on December 12, 2013, commencing at 10:00 a.m. Central Time at the offices of Porter Hedges LLP, 1000 Main Street, 36th Floor, Houston, Texas.  Only Qualified Bidders may participate in the auction.  All Qualified Bidders, or their authorized representatives, must be physically present or present via teleconference at the auction.  At the commencement of the auction, the Trustee shall announce the bidding order, which shall be based on: (i) the amount of the Qualified Bidder's bid (from low to high); and (ii) if Qualified Bids are identical, the time the Qualified Bids were delivered to the Trustee (the first such received identical bid going first in the auction).  The Trustee may conduct the auction by any grouping of assets, in any order, that she deems appropriate.  Minimum overbid increments at the auction shall be in the amount of not less than $25,000.00.

All Qualified Bidders participating at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

**Selection of the Highest and Best Bid(s)**.  At the conclusion of the auction, the Trustee will announce the highest and best Qualified Bid(s) (the "Highest and Best Bid(s)") and the next highest and best Qualified Bid (the "Back-Up Bid(s)").  The Trustee will seek approval of the Highest and Best Bid(s) at the Sale Hearing.  If for any reason, the Qualified Bidder(s) submitting the Highest and Best Bid(s) fails to timely consummate the purchase of the Purchased Assets, the Trustee may seek to consummate a sale based on the Back-Up Bid(s) without further approval by the Court.  The Back-Up Bid(s) and the obligation of the party submitting such bid(s) to consummate the purchase of the Purchased Assets shall remain open and in full force until the close of a sale of the Purchased Assets to the party making the Highest and Best Bid(s) or the party making the Back-Up Bid(s).

**Sale Hearing**.  The Sale Hearing approving and authorizing the Proposed Sale(s) to the Highest and Best Bidders(s) on terms and conditions consistent with the Offer(s) and in accordance with the Bid Procedures, shall be conducted by the Bankruptcy Court on or before December 18, 2013, at 2:00 p.m. (Central Time), or on such other date as may be established by the Bankruptcy Court.  Unsuccessful Qualified Bidders shall not be permitted to submit new, higher bids at the Sale Hearing.

**Return of Deposits**.  Within three (3) business days after the conclusion of the auction described above, the Trustee shall return by check the full amount of the Alternative Buyer's Deposit submitted by each party that is not selected as submitting the Highest and Best Bid(s) or the Back-Up Bid(s).  If the sale of the Purchased Assets is consummated with the party submitting the Highest and Best Bid(s), the Alternative Buyer's Deposit of the party that is declared the Back-Up Bid(s) shall be returned by check transfer within three business days after the closing of the sale to the party submitting the Highest and Best Bid(s).  In the event that closing does not occur by the date specified by the Back-Up Bidder(s)

in its bid, it shall be entitled (at its option) to return of its deposit, in which case it shall no longer have the status of Back-Up Bidder(s). If a Stalking Horse Bidder's bid is neither a Highest and Best Bid nor the Back-Up Bid, then its Deposit (defined below) shall be returned within twenty-four (24) hours of the conclusion of the auction.

8. The foregoing sale procedure provides an appropriate framework to ensure that the Trustee's goal of obtaining the maximum value for the Purchased Assets is realized. The proposed process is transparent and represents a fair balance of the competing issues present in this case.

## Requested Expense Reimbursement

9. In connection with the Offers, the Trustee seeks approval of a capped expense reimbursement. Provided that the Stalking Horse Bidder and the Trustee have entered into a binding Asset Purchase Agreement ("APA") prior to December 10, 2013, at 5:00 p.m. (i.e. the deadline to submit Qualified Bids), if (i) the APA is terminated as a result of a breach by the Trustee, or (ii) the Trustee accepts a bid from an alternative bidder, then the Trustee shall pay to the Stalking Horse Bidder reimbursement of all expenses incurred by the Stalking Horse Bidder in connection with the transaction, up to a maximum of $25,000.00 (the "Expense Reimbursement"). The Trustee's obligation to pay the Expense Reimbursement shall constitute an administrative expense of the kind specified in § 503(b)(1) of the Bankruptcy Code. The 10% deposit made by the Stalking Horse Bidder (the "Deposit") shall be held in an interest bearing segregated escrow account with the Trustee's counsel and shall not be intermingled with, or deemed to be, an asset of the estate. The Deposit shall not be subject to any adverse claims or liens against the Debtor. The Trustee shall return the Deposit (if not previously returned in accordance with the provisions set forth above concerning return of deposits) and pay the Expense Reimbursement to the Stalking Horse Bidder upon the earliest to occur of: (i) the closing of an alternative transaction; or (ii) the termination of the APA except as a result of a

breach by the Stalking Horse Bidder. No Qualified Bidder other than the Stalking Horse Bidders shall be entitled to an Expense Reimbursement.

10. The Trustee believes that the Expense Reimbursement is appropriate under the circumstances as a cost of ensuring that the Debtor's bankruptcy estate maximizes value for the Purchased Assets, while also providing the Trustee with the opportunity to continue her marketing efforts. The Trustee believes that the amount of the cap on the Expense Reimbursement is imminently reasonable for a transaction of the type and size contemplated, and in light of the attendant risks present in this case.

11. The determination of whether a stalking horse fee/expense arrangement should be allowed is based on whether the fees and expenses are necessary to preserve the value of the estate. *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 534 (3d Cir. 1999). Courts have evaluated such arrangements under the business judgment rule standard. *Cottle v. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't Stores*, 683 F.Supp. 422 (S.D.N.Y. 1988); *In re Integrated Res., Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992), *appeal dismissed by* 3 F.3d 49 (2d Cir. 1993); *see also In re Twenver, Inc.*, 149 B.R. 954 (Bankr. D. Colo. 1992). The considerations that underlie a debtor's business judgment to pay a break-up fee or expense reimbursement are relevant to the Court's determination of the request. *Id*.

12. It is well-established that "[a] bankruptcy court should uphold a break-up fee which was not tainted by self-dealing and was the product of arm's-length negotiations." *In re Integrated Res., Inc.*, 147 B.R. at 658. In the instant case, the proposed Expense Reimbursement and bid protections have been the product of good faith, arm's-length negotiations between the Trustee and the Stalking Horse Bidders. The Expense Reimbursement is based on actual

3515541v4

expenses incurred and is within the spectrum of "break-up fees" approved by bankruptcy courts in chapter 11 cases throughout the country. *See e.g., In re Enron Corp.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y., April 8, 2004) (court approved break-up fee equal to 5% of the purchase price); *In re TransCom USA Management Co., L.P.*, Case No. 01-35158 (KKB) (Bankr. S.D. Tex., February 12, 2002) (court approved a break-up fee of more than 3.6% of the purchase price for the assets); *In re Ameriserve*, Case No. 00-0358 (PJW) (Bankr. D. Del., September 27, 2000) (court approved a break-up fee of 3.64% or $4,000,000 in connection with $110,000,000 sale).

### Request for Expedited Consideration

13. The Trustee and the Stalking Horse Bidders are seeking to close the sales contemplated in this Motion by the end of 2013. Accordingly, based on the date of the proposed auction, the Trustee request that the Court consider this Motion on an expedited basis.

Accordingly, the Trustee requests that the Court (i) approve the Motion as set forth above; and (ii) grant the Trustee other just relief.

**Dated: November 27, 2013.**

        Respectfully submitted,

        **Porter Hedges LLP**

By:   /s/ Joshua W. Wolfshohl
      Joshua W. Wolfshohl
      State Bar No. 24038592
      Aaron J. Power
      State Bar. No. 24058058
      1000 Main Street, 36th Floor
      Houston, Texas 77002
      (713) 226-6000
      (713) 228-1331 (fax)

      **Proposed Counsel to Elizabeth M. Guffy, Chapter 11 Trustee for Brown Medical Center, Inc.**

## CERTIFICATE OF SERVICE

  I hereby certify that a true and correct copy of the foregoing instrument was duly served by United States first class mail to all parties listed on the attached Service List and by electronic transmission to all registered ECF users appearing in the case on November 27, 2013.

               /s/ Joshua W. Wolfshohl
               Joshua W. Wolfshohl

3515541v4

SERVICE LIST

**Trustee**
Elizabeth Guffy
Chapter 11 Trustee
Burleson LLP
700 Milam Street, Suite 1100
Houston, TX  77002

**Trustee's Counsel**
Joshua W. Wolfshohl
Porter Hedges LLP
1000 Main Street, 36th Floor
Houston, TX  77002

**U.S. Trustee**
Nancy Holley
Office of the US Trustee
515 Rusk, Suite 3516
Houston, TX  77002

Stephen Douglas Statham
Office of the US Trustee
515 Rusk, Suite 3516
Houston, TX  77002

**Governmental Entities**
Internal Revenue Service
1919 Smith Street
Stop 5022 HOU
Houston, TX  77002

Securities Exchange Commission
Bankruptcy Division
500 W. Madison St, Suite 1400
Chicago, IL  60661-2511

Susan Combs, Comptroller
LBJ State Office Building
111 E. 17th Street
P.O. Box 13528
Austin, TX  78711

Texas Comptroller of Public Accounts
Revenue Accounting Division
Bankruptcy Section
P.O. Box 13528
Capital Station
Austin, TX  78711

U.S. Attorneys Office
Southern District
Kenneth Magidson
P.O. Box 61129
Houston, TX  77208-1129

U.S. Department of Justice
950 Pennsylvania Ave., NW
Washington, DC  20520-0001

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

**Secured Creditors**
Crown Financial Funding LP
16420 Park Ten Place, Suite 125
Houston, TX  77084

Nevada State Bank
Corporate Lending Department
750 E. Warm Springs Road
Las Vegas, NV  89119

The First National Bank of Eagle Lake
Main Office
100 Commerce, P.O. Box 247
Eagle Lake, TX  77434

**20 Largest Creditors**
CBS Outdoor
P.O. Box 33074
Newark, NJ  07188-0074

CIT Finance, LLC
c/o Robert K. Mitchell
Palmer Manuel

1

3505935v1

8350 N. Central Expressway, Suite 1111
Dallas, TX  75206

Clear Channel Outdoor
P.O. Box 847247
Dallas, TX  75284-7247

Commercial Station, LLC
1500 W. Cypress Creek Road #409
Fort Lauderdale, FL  33309

Cox Media
File 50464
Los Angeles, CA  90074-0464

Farnam Street Financial
240 Pondview Plaza
Minnetonka, MN  55343

Fox Sports Southwest
3804 Collection Center Dr.
Chicago, IL  60693

KABB
4335 NW Loop 410
San Antonio, TX  78229-5168

KDFW FOX 4
P.O. Box 844824
Dallas, TX  75284-4824

KENS
P.O. Box 731253
Dallas, TX  75373-1253

Konica Minolta
21146 Network Place
Chicago, IL  60673-1211

KPRC TV
P.O. Box 934721
Atlanta, GA  31193-4721

KSAT
P.O. Box 951519
Dallas, TX  75395-1519

KTVT-TV
P.O. Box 33091
Newark, NJ  07188-0091

McDowell Mountain Medical Investors Ltd.
P.O. Box 50065
Los Angeles, CA  90074-0065

NexCore
1621 18th Street, Suite 250
Denver, CO  80202

Pace Communications
P.O. Box 60014
Charlotte, NC  28260

Reagan National Advertising of Austin
P.O. Box 970095
Dallas, TX  75397

Texas J&K Properties LP/J&K Management Group LLC
18518 Hardy Oak Blvd., Suite 320
San Antonio, TX  78258

Time Warner Cable
P.O. Box 849151
Dallas, TX  75284-9151

**Parties Requesting Notice**
Heather Helene Jobe
Bell Nunnally
3232 McKinney Ave., Suite 1400
Dallas, TX  75204

Shelley B. Marmon
Crady Jewett
2727 Allen Pkwy, Suite 1700
Houston, TX  77019-2125

Jeff Carruth
Weycer, Kaplan, Pulaski & Zuber, P.C.
3030 Matlock Rd., Suite 201
Arlington, TX  76015

2

Richard M. Kaplan
Weycer, Kaplan, Pulaski & Zuber, P.C.
Eleven Greenway Plaza, Suite 1400
Houston, TX  77046

Randy W. Williams
Thompson & Knight LLP
333 Clay Street, Suite 3300
Houston, TX  77002-4499

Susan B. Hersh
Susan B. Hersh, P.C.
12770 Coit Road, Suite 1100
Dallas, TX  75251

Richard T. Chapman
Anderson, Smith, Null & Stofer, L.L.P.
One O'Connor Plaza, Seventh Floor
Post Office Box 1969
Victoria, TX  77902

Craig H. Cavalier
P.O. Box 270565
Houston, TX  77277

Evelyn Irene Breithaupt
333 Clay St. Suite 3300
Houston, TX  77002

Aaron Michael Kaufman
Cox Smith Matthews Incorporated
1201 Elm Street, Suite 3300
Dallas, TX  75270

Bill Boyar
BoyarMiller
4265 San Felipe, Suite 1200
Houston, TX  77027

Morris D. Weiss
Hohmann, Taube & Summers, L.L.P.
100 Congress Ave., 18th Floor
Austin, TX  78701

Kenneth A. Hill

Quilling, Selander, Lownds, Winslett & Moser, P.C.
2001 Bryan Street, Suite 1800
Dallas, TX  75201

David J. Booth
Frederick Black
Greer, Herz & Adams, L.L.P.
2525 South Shore Blvd., Suite 203
League City, Texas  77573

Jeffrey G. Tinkham
Martin, Disiere, Jefferson & Wisdom, LLP
808 Travis Street, 20th Floor
Houston, TX  77002

3