

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
12/04/2013

IN RE: §
　　　　　§
BROWN MEDICAL CENTER, INC., § CASE NO. 13-36405
　　　　　§
　Debtor. § Chapter 11

ORDER APPROVING (I) SALE PROCEDURE AND FORM OF NOTICE; AND
(II) BID PROTECTIONS
(Docket No. 104)

The Court has considered the Trustee's Motion to Approve (i) Sale Procedure, Form of Asset Purchase Agreement and Form of Notice; and (ii) Bid Protections. The Court finds that notice of the Motion is sufficient under the circumstances; the requested relief is appropriate; and the bid protections are reasonable and consistent with the proper exercise of the Trustee's business judgment. Accordingly, it is

**ORDERED THAT:**

1.　　The Trustee's Motion to Approve (i) Sale Procedure and Form of Notice; and (ii) Bid Protections (the "Motion"), including approval of the Expense Reimbursement (as defined in the Motion), is **GRANTED** to the extent set forth below.

2.　　Northstar Acquisitions, LLC, or its assigns, and Renova Hand Centers, LLC (the "Stalking Horse Bidder(s)") are hereby designated as the stalking horse purchasers under the terms described in the Offers (as defined in the Motion) and herein.

3.　　This Order sets forth the procedures by which the Trustee will conduct the auction of the Debtor's assets. This Order shall not modify or amend the Stipulation and Order Approving the Ratification of Termination of Lease, Turnover of Premises, Abandonment of Furniture, Fixtures & Equipment, and Release of Certain Claims at Docket No. 90 regarding the Austin location, nor shall this Order impact the liens, if any, of any of the landlords of the locations. Nothing contained herein shall be construed as approval of the Offers, the sale of any assets, or the assumption and assignment of any unexpired, terminated or expired leases or executory contracts. Nothing contained herein shall be construed as approval by the landlords to any transfer or assignment of the leases to the Stalking Horse Bidders. No party shall have waived any objection to the final sale or assumption and assignment of unexpired, terminated or expired leases or executory contracts by failing to object to the Motion.

4.　　Within three (3) business days following the entry of this Order, the Trustee will serve by first class mail a notice of the proposed sale containing the date of the Auction and Sale Hearing to: (i) all potential purchasers previously identified or solicited by the Trustee and/or Claro during this bankruptcy case; (ii) all other potentially interested parties identified by the Trustee and/or Claro (collectively, with the parties identified in (i) above, the "Potential Purchasers"); (iii) the Office of the United States Trustee; (iv) counsel for the Stalking Horse Bidders; (v) all parties who are known to possess or assert a lien, claim, encumbrance or interest

3533626v2

in or upon any of the Purchased Assets (as defined in the Offers); (vi) all applicable United States, state and local regulatory or taxing authorities, recording offices or any governmental entity which have a reasonably known interest in the relief requested; and (vii) all parties on the most current master service list filed in this case.

5.      Only Qualified Bidders may participate in the bidding process. To become a Qualified Bidder, a potential bidder must on or before 5:00 p.m. Central Time on December 10, 2013 (i) execute and deliver to Claro a confidentiality agreement prepared by the Trustee, (ii) deposit with counsel for the Trustee in an amount equal to 10% of the cash consideration in the Qualified Bidder's bid (each, the "Alternative Buyer's Deposit") which deposit shall be nonrefundable unless such Qualified Bidder is not the highest and best offer as determined by the Court; (iii) submit to the Trustee an unqualified and binding cash bid along with an executed written agreement ("Qualified Bids"); and (iv) provide financial and other information to Claro and the Trustee that allow them to make a reasonable determination as to such bidder's ability to consummate a sale as contemplated herein. For purposes of this Order, minimum bids for assets that are the subject of the Offers (as defined in the Motion) are as follows: (i) $375,000 for the Debtor's Scottsdale, Arizona equipment; (ii) $375,000 for the Debtor's Dallas, Texas equipment; (iii) $1,025,000 for the Debtor's San Antonio, Texas equipment; (iv) $825,000 for the Debtor's Austin, Texas equipment; and (v) $650,000 for the Debtor's Las Vegas, Nevada equipment.

6.      Provided that (i) the Stalking Horse Bidders and the Trustee have entered into a binding Asset Purchase Agreement in substantially the same form as was circulated by the Trustee to prospective bidders prior to the filing of the Motion (the "APA") prior to December 10, 2013, at 5:00 p.m. (i.e. the deadline to submit Qualified Bids) and (ii) the Stalking Horse Bidders have made deposits with counsel for the Trustee in an amount equal to 10% of the cash consideration in the Stalking Horse Bidders' Offers, the Stalking Horse Bidders shall be deemed to be Qualified Bidders and parties in interest for all purposes. If no other Qualified Bidders are identified, the final form of the APAs between the Trustee and the Stalking Horse Bidders shall be deemed the Highest and Best Bid (as defined below). No letter of intent or other written proposal submitted to the Trustee prior to the filing of the Motion shall constitute or be considered a Qualified Bid for purposes of these sale procedures. The Trustee, in consultation with her counsel and Claro, shall be responsible for conducting the bid and sale process.

7.      On or before 5:00 p.m. Central Time on December 11, 2013, the Trustee shall file a notice with the Court identifying all Qualified Bidders and attaching copies of all bids that were timely received. The Trustee shall serve a copy of the notice and the corresponding bids on all Qualified Bidders by (a) facsimile or electronic mail or (b) overnight delivery.

8.      If one or more timely Qualified Bids are received, an open auction for the Purchased Assets will be conducted before the Court on December 12, 2013, commencing at 10:00 a.m. Central Time in Courtroom 600, 6th Floor, 515 Rusk Ave., Houston, Texas 77002. Only Qualified Bidders may participate in the auction. All Qualified Bidders, or their authorized representatives, must be physically present or present via teleconference at the auction. At the commencement of the auction, the Trustee shall announce the bidding order, which shall be based on: (i) the amount of the Qualified Bidder's bid (from low to high); and (ii) if Qualified Bids are identical, the time the Qualified Bids were delivered to the Trustee (the first such received identical bid going first in the auction). The Trustee may conduct the auction by any

grouping of assets, in any order, that she deems appropriate. Minimum overbid increments at the auction shall be in the amount of not less than $25,000.00.

9. At the Auction, any Qualified Bidder who has a valid, stipulated lien on any Asset(s) (a "Credit Bidder") shall have the right to credit bid all or a portion of the value of such Credit Bidder's claims within the meaning of § 363(k) of the Bankruptcy Code; provided that, a Credit Bidder shall have the right to credit bid its claim only with respect to the collateral by which such Credit Bidder is secured; provided further that, for purposes of its Qualified Bid, the Credit Bidder's claim shall be deemed to have the value it possesses on the date of the Auction (or as otherwise established by the Bankruptcy Court).

10. All Qualified Bidders participating at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction.

11. At the conclusion of the auction, the Trustee will announce the highest and best Qualified Bid(s) (the "Highest and Best Bid(s)") and the next highest and best Qualified Bid (the "Back-Up Bid(s)"). The Trustee will seek approval of the Highest and Best Bid(s) at the Sale Hearing. If for any reason, the Qualified Bidder(s) submitting the Highest and Best Bid(s) fails to timely consummate the purchase of the Purchased Assets, the Trustee may seek to consummate a sale based on the Back-Up Bid(s) without further approval by the Court. The Back-Up Bid(s) and the obligation of the party submitting such bid(s) to consummate the purchase of the Purchased Assets shall remain open and in full force until the close of a sale of the Purchased Assets to the party making the Highest and Best Bid(s) or the party making the Back-Up Bid(s).

12. Within three (3) business days after the conclusion of the auction described above, the Trustee shall return by check the full amount of the Alternative Buyer's Deposit submitted by each party that is not selected as submitting the Highest and Best Bid(s) or the Back-Up Bid(s). If the sale of the Purchased Assets is consummated with the party submitting the Highest and Best Bid(s), the Alternative Buyer's Deposit of the party that is declared the Back-Up Bid(s) shall be returned by check transfer within three business days after the closing of the sale to the party submitting the Highest and Best Bid(s). In the event that closing does not occur by the date specified by the Back-Up Bidder(s) in its bid, it shall be entitled (at its option) to return of its deposit, in which case it shall no longer have the status of Back-Up Bidder(s). If a Stalking Horse Bidder's bid is neither a Highest and Best Bid nor the Back-Up Bid, then its Deposit (defined below) shall be returned within twenty-four (24) hours of the conclusion of the auction.

13. Provided that the Stalking Horse Bidder and the Trustee have entered into a binding APA prior to December 10, 2013, at 5:00 p.m. (i.e. the deadline to submit Qualified Bids), if (i) such APA is terminated as a result of a breach by the Trustee, or (ii) the Trustee accepts a bid from an alternative bidder, then the Trustee shall pay to the Stalking Horse Bidder a reimbursement of all expenses incurred by the Stalking Horse Bidder in connection with the transaction, up to a maximum of $25,000 (the "Expense Reimbursement"). The Trustee's obligation to return the Expense Reimbursement shall constitute an administrative expense of the kind specified in § 503(b)(1) of the Bankruptcy Code. The 10% deposit made by the Stalking Horse Bidder (the "Deposit") shall be held in an interest bearing segregated escrow account with

the Trustee's counsel and shall not be intermingled with, or deemed to be, an asset of the estate. The Deposit shall not be subject to any adverse claims or liens against the Debtor. The Trustee shall return the Deposit (if not previously returned in accordance with the provisions in Paragraph 10, above) and pay the Expense Reimbursement to the Stalking Horse Bidder upon the earliest to occur of: (i) the closing of an alternative transaction; or (ii) the termination of the APA except as a result of a breach by the Stalking Horse Bidder. No Qualified Bidder other than the Stalking Horse Bidders shall be entitled to an Expense Reimbursement.

14. The Sale Hearing approving and authorizing the Proposed Sale(s) to the Highest and Best Bidders(s) on terms and conditions consistent with the Offer(s) and in accordance with the Bid Procedures, shall be conducted by the Bankruptcy Court on or before December 18, 2013, at 2:00 p.m. (Central Time), or on such other date as may be established by the Bankruptcy Court. Unsuccessful Qualified Bidders shall not be permitted to submit new, higher bids at the Sale Hearing.

15. The Trustee and Claro, in their reasonable discretion, may adopt other or additional rules for the Auction at or prior to the Auction that, in their reasonable discretion, will better promote the goals of the Auction and that are not inconsistent with any of the provisions of this Order, if applicable.

16. This Order shall be effective and enforceable immediately upon entry.

SIGNED this 4th day of Dec., 2013.

**THE HONORABLE JEFF BOHM,**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

3533626v2